**NOT FOR PUBLICATION**                                                                    CLOSED

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


DANIEL G. SHOUP,              :        Civil No. 09-0585 (RBK)
                              :
          Petitioner,         :
                              :
     v.                       :        OPINION
                              :
WARDEN PAUL M. SHULTZ,        :
                              :
          Respondent.         :
                              :
```

**APPEARANCES:**
Daniel G. Shoup, # 24192 038
FCI Fairton
P.O. Box 420
Fairton, New Jersey 08320
Petitioner Pro Se

**Robert B. Kugler**, District Judge:

This matter comes before the Court upon petitioner Daniel G. Shoup's ("Petitioner") filing of a petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241 ("Petition"), in which Petitioner asserts that certain statements made to him by a staff member of FCI Fairton indicate that Respondent violated the Second Chance Act and Petitioner's rights under the Due Process Clause.  See generally, Docket Entry No. 1.  The Petition was received by the Clerk unaccompanied by Petitioner's filing fee or by Petitioner's application to proceed in this matter in forma pauperis, and no filing fee or in forma pauperis has been received by the Court as of the date of issuance of this Opinion and accompanying Order.  See generally, Docket.

I.  **BACKGROUND**

   **A.  Petitioner's Term of Imprisonment**

The Petition informs the Court that, on May 18, 2004, Petitioner was found guilty of being a felon in illegal possession of a firearm and, on October 12, 2004, the United States District Court for the District of Massachusetts sentenced Petitioner to a prison term of 210 months.  See Docket Entry No. 1, at 3-4.  Upon appeal and remand by the Court of Appeals for the First Circuit, Petitioner was re-sentenced to the prison term of 110 months.  See id. (citing United States v. Shoup, 476 F.3d 38 (1st Cir. 2007)[1]).  The Court's own research of Petitioner's

---

[1]  Specifically, the First Circuit observed as follows:

> [Petitioner] was sentenced prior to the decision in United States v. Booker, 543 U.S. 220 (2005), which held that the federal Sentencing Guidelines are unconstitutional to the extent mandatory, as distinguished from advisory.  As [Petitioner] properly preserved his Booker challenge in the district court, the government must bear the burden of establishing beyond a reasonable doubt that the district court would not have imposed a lesser sentence if it had acted under an advisory -- rather than mandatory -- Guidelines regime.  See United States v. Fornia-Castillo, 408 F.3d 52, 73 (1st Cir. 2005).  The government acknowledges that it cannot meet this burden given that the district court sentenced [Petitioner] at the low end of the applicable guidelines range, and expressly stated that it would impose the statutory minimum 180-month sentence if the guidelines were invalidated by Booker.  Accordingly, we vacate the sentence and remand for re[-]sentencing in light of Booker.

Shoup, 476 F.3d at 46.

public record maintained by the federal Bureau of Prisons ("BOP") indicates that Petitioner is scheduled to be released from confinement on March 16, 2010.  <u>See</u> http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false&FirstName=daniel&Middle=&LastName=shoup&Race=U&Sex=U&Age=&x=0&y=0.

Petitioner executed his Petition on February 3, 2009, and – upon receiving the Petition on February 9, 2009 – the Clerk docketed the same on February 11, 2009, that is, effectively one year prior to the date of Petitioner's projected release.  <u>See</u> Docket.

### B.   The Second Chance Act

The Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692, became effective as of April 9, 2008, and was codified at 18 U.S.C. §§ 3621, 3624.  The Second Chance Act increased the duration of pre-release custody placement in a residential re-entry center ("RRC"), also known as a community corrections center ("CCC"), from the maximum period of six months to the maximum period of twelve months and required the BOP to make an individual determination that ensures that the placement be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  18 U.S.C. § 3624(c)(6)(C) (Apr. 9, 2008).

## II.  PETITIONER'S CONTENTIONS

Petitioner asserts that the named Respondent, i.e., the warden of Petitioner's place of confinement, as well as the BOP as a whole, "refus[ed] to comply with . . . [t]he Second Chance Act of 2007 and [refused] to afford [Petitioner his right to an individualized assessment of eligibility for a full year in a [CCC] in accordance with [d]ue process of [l]aw under the [A]ct] and [t]he United States Constitution . . . ."  Docket Entry No. 1, at 1.

Elaboration on the circumstances of the alleged refusal to comply with the Second Chance Act, Petitioner: (a) describes the following events, and (b) avails the Court to Petitioner's opinion that:

> the [R]espondent [and] his staff and the . . . BOP ha[ve] continually state[d to unspecified entities on unspecified occasions that] they belive [s]ix months is the maximum time they believe any inmate should receive for [CCC] placement and the[ir] position is irrevocable to them.  There ha[ve] been numerous [l]itigations in regard to this matter and even when a favorable decision [was] granted to an inmate[,] the [R]espondents still refuse to comply with the statut[ory] requirements. . . .
>
> [Petitioner] is now eligible to be [placed] in [a CCC, but] the staff at FCI Fairton has made clear to [Petitioner] that [Petitioner would] only receive six months maximum in [a CCC]. . . . [On an unspecified date, Petitioner] has spoken to [an unspecified] unit manager and explained that . . . after the extended period of time [he] has been incarcerated it would require additional time for [Petitioner] to reintegrate back into society and [Petitioner] asked to be considered for [a] full year [of CCC placement]. [An unspecified] unit team stated [during, apparently, an

>     oral discussion,] that [Petitioner] would receive only
>     six months maximum [of CCC.  Petitioner] asked for an
>     individualized assessment [but an unspecified member
>     of] the Respondent[']s staff stated again that all
>     inmates at [FCI] Fairton receive maximum of six months
>     no matter what the[ir] particular individual
>     circumstances [are].

Id. at 2-3, 5.

**III. JURISDICTION**

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody"; and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges his CCC placement, and he was incarcerated in New Jersey at the time he filed the Petition. See Woodall v. Fed. Bureau of Prisons,

Page 5 of 14

432 F.3d 235, 242-44 (3d Cir. 2005); see also Spencer v. Kemna, 523 U.S. 1 (1998).

**IV.   EXHAUSTION REQUIREMENT**

    **A.   Rationale of the Exhaustion Requirement**

Although the exhaustion requirement is not jurisdictional but that of prudence, the requirement is diligently enforced by the federal courts.  See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760-62 (3d Cir. 1996) (noting that "a procedural default in the administrative process bars judicial review because the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar"); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("we have consistently applied an exhaustion requirement to claims brought under § 2241").  In order for a federal prisoner to exhaust her administrative remedies, she must comply with 28 C.F.R. § 542.  See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 U.S. Dist. LEXIS 54310, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007).

To comply with the exhaustion requirement, an inmate first must informally present his complaint to staff through filing a

BP-8 form, and staff shall attempt to informally resolve any issue.  See 28 C.F.R. § 542.13(a).

If unsuccessful at – or dissatisfied with the outcome of -- informal resolution, the inmate shall raise his complaint formally, by filing a BP-9 form with the warden of the institution where he is confined.  See id. at § 542.14(a).  If dissatisfied with the warden's response, the inmate shall appeal an adverse decision by filing a BP-10 form with the Regional Office and, if the decision of the Regional Office still does not satisfy the inmate, the inmate shall file a BP-11 form with the Central Office of the BOP.  See id. at §§ 542.15(a) and 542.18. The logic of the procedure ensures that the agency, in this case, the BOP, would create an administrative record and the final decision entered by the Central Office would bind the BOP in its entirety.  Consequently, no administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office.  See Sharpe v. Costello, 289 Fed. App'x 475 (3d Cir. 2008).

It is true that, in certain narrow circumstances, the exhaustion requirement is excused, and such exceptions were made even in the matters setting forth the Second Chance Act challenges.  For instance, exhaustion was excused in Strong v. Schultz, 599 F. Supp. 2d 556 (D.N.J. 2009), where the Strong court described the pertinent events as follows:

> The BOP acknowledges that Strong pursued all three steps of the Administrative Remedy Program, with the final decision on May 19, 2008, by Harrell Watts of the Central Office. Respondents contend, however, that the Petition should nevertheless be dismissed as unexhausted because Petitioner did not exhaust administrative remedies a second time [around]. This Court notes that Strong is currently scheduled to be placed in a CCC for the final six months of his sentence . . . . Given that it took five months to exhaust administrative remedies the first time around, dismissal of the Petition as unexhausted would effectively moot Petitioner's § 2241 claim through no fault of his own.

Id. at *561 (citation omitted).

In contrast, where litigants had not attempted any exhaustion, the courts presiding over Second Chance Act challenges systemically dismissed their petitions for failure to meet the exhaustion requirement. In Smith v. Grondolsky, 09-1355 (RMB) (D.N.J.), the very judge who granted a writ of habeas corpus in Strong, elaborated on one of these unexhausted scenarios, observing as follows:

> Here, in contrast [with Strong], Petitioner unambiguously indicates that he never attempted to exhaust his administrative remedies. . . . Thus, unlike the petitioner in Strong, Petitioner in the instant matter has ample time to: (a) seek administrative remedy; (b) return to the federal courts in the event he is unsatisfied with the final administrative determination; and (c) even obtain judicial relief in the form of CCC transfer for the maximum period envisioned by the Second Chance Act, 18 U.S.C. § 3624(c)(6) ([i.e., twelve months]). Reflecting on the interplay between the Second Chance Act and the exhaustion requirement, this Court finds persuasive the rationale of another court, which observed as follows:

> The petitioner argues that exhausting his administrative remedies would be futile . . .  The "futility" exception which the petitioner  invokes applies in certain narrowly-defined circumstances, such as where there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." Colton v. Ashcroft, 299 F. Supp. 2d 681, 689-90 (E.D. Ky. 2004) (citing James v. United States Dept. of Health and Human Services, 824 F.2d 1132, 1139 (D.C.Cir.1987).  While this argument holds more superficial appeal, the regulation at issue is comparatively new, as is the BOP's enforcement of it, and there is simply not yet a sufficiently-established record of the BOP's enforcement policies regarding the issue.  The Court is not yet prepared to conclusively hold that the BOP's position on the matter is fixed and inflexible.  The Court therefore holds that the petitioner has failed to provide a legally-sufficient justification for his failure to exhaust administrative remedies, and the petition must be denied as prematurely brought.

Johnson v. Hogsten, 2009 U.S. Dist. LEXIS 32085, at *5-6 (E.D. Ky. Apr. 15, 2009).  This Court agrees. While Petitioner invites this Court to reach an umbrella conclusion that no exhaustion of administrative remedies is ever required for any litigant raising a § 2241 challenge on the grounds of the Second Chance Act, this Court declines the invitation and finds that such holding would fly in the face of the Third Circuit's teaching -- as to the firmness of the exhaustion requirement -- articulated in Callwood v. Enos, 230 F.3d at 634, and Moscato, 98 F.3d at 760-62.

Smith v. Grondolsky, 09-1355, Docket Entry No. 4, at 4-5 (original brackets omitted); accord Breazeale v. Shultz, 2009 U.S. Dist. LEXIS 43671 (D.N.J. May 19, 2009) ("Petitioner maintains that exhaustion in his case would be futile because his projected release date [comes in two months], and there is

insufficient time to exhaust the three steps of the Administrative Remedy Program. . . . [G]iven the time limits set forth in 28 C.F.R. § 542.18 and the fact that Petitioner's sentence does not expire for another two months, this Court sees no reason to excuse Petitioner's failure to at the very least [submit] a BP-9 administrative remedy request to the Warden").

**B.   Petitioner's Failure to Exhaust his Petition**

Here, Petitioner asserts that his failure to meet the exhaustion requirement should be excused because: (a) Petitioner believes that, if a writ is granted directing individualized evaluation for CCC placement, the BOP would not obey the order of this Court;[2] (b) Petitioner is of opinion, based on an alleged conversation with an unspecified staff member at FCI Fairton, that the BOP has adopted a position that all CCC placements would not exceed six months, regardless of the inmate's circumstances; and (c) an unspecified staff member at FCI Fairton orally expressed this staff member's opinion that Petitioner, personally, would be availed to a CCC period of six months maximum.  See Docket Entry No. 1, at 2-3, 5.

---

[2]   Petitioner's belief is not only incorrect factually, see Strong v. Schultz, 08-3821 (RMB) (D.N.J.), Docket Entries Nos. 22 and 24 (judicial order granting a writ and corresponding respondent's letter informing the Strong court of compliance with the order), but is counterproductive to Petitioner's cause: indeed, if Petitioner is correct in his belief that the BOP is certain to ignore this Court's order, this Court is not clear as to Petitioner's rationale for even initiating this matter.

It appears self-evident that this Court cannot excuse Petitioner's failure to meet the exhaustion requirement on the grounds of vague gossips Petitioner collected, or Petitioner's self-serving conclusions or his factually and logically unsubstantiated beliefs.

Moreover, even if this Court were to presume that Petitioner's alleged conversation with an unspecified staff member of FCI Fairton took place, and Petitioner was informed of that staff member's position, the Court cannot deem the warden, the Regional Office and the Central Office bound by that staff member's position.  Indeed, it is quite plausible – if not certain – that the warden, the Regional Office and the Central Office could arrive to the conclusion that Petitioner qualifies for a more-than-six-month period of CCC.  Having no information as to what the decisions of these officials would be, this Court cannot find Petitioner's predictions as to what these decisions would be "hypothetically illegal," same as the Court cannot deem the exhaustion process "futile" on the facts asserted in the Petition.

Finally, the Court is mindful of the fact that, at the time of entry of this Opinion and accompanying Order, Petitioner is serving his last year of prison term, _i.e._, the year during which he might be availed to a CCC placement under the Second Chance Act.  This fact, however, does not alter the Court's analysis.

The Second Chance Act became effective as of April 9, 2008, i.e., at the time when: (a) Petitioner was well aware of when his reduced-by-resentencing term of imprisonment would end, see Shoup v. USA, 08-10888 (RGS) (Mass.), Docket Entry No. 10, at 2 (clarifying that Petitioner was re-sentenced on May 3, 2007); and (b) Petitioner had more than twenty-three months until his release. See http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false&FirstName=daniel&Middle=&LastName=shoup&Race=U&Sex=U&Age=&x=0&y=0 (stating Petitioner's projected release date as March 16, 2010).

In light of this timeline, Petitioner had more than an ample period of time to exhaust his administrative remedies. He, however, elected not to do so; rather, he waited until less than six weeks remained prior to his eligibility period under the Second Chance Act started running, and only then did he initiate this action.

Consequently, the calamity - if any – which Petitioner might be facing is of his own making, and such hypothetical self-inflicted distress cannot serve as a basis for excusing the exhaustion requirement. See Johnson v. Hogsten, 2009 U.S. Dist. LEXIS 32085, at *5 ("Johnson argues that the Court should excuse him from completing the BOP's grievance process because he will be unable to do so before the date on which he would be entitled to transfer to a [CCC] had the BOP properly applied the Second

Chance Act. This argument is without merit. . . . [H]ad he properly invoked the BOP's grievance process . . . , he would have had ample time to complete the exhaustion process. Therefore, any injury Johnson would suffer from his inability to complete the grievance process in time to obtain the full measure of relief he now seeks is self-inflicted").

**V. CONCLUSION**

Because the Petition, on its face, unambiguously indicates that Petitioner failed to exhaust administrative remedies, and Petitioner did not state valid grounds excusing his failure to exhaust available administrative remedies, this Court will dismiss the Petition. See Lindsay v. Williamson, 271 Fed. App'x 158, 160 (3d Cir. 2008) (affirming summary dismissal of § 2241 petition challenging BOP's execution of sentence "[b]ecause the District Court could determine from the face of Lindsay's petition that he did not exhaust his administrative remedies, a prerequisite to suit"); Warwick v. Miner, 257 Fed. App'x 475 (3d Cir. 2007) (affirming dismissal of § 2241 petition challenging BOP's calculation of sentence for failure to exhaust Administrative Remedy Program).

The dismissal is without prejudice to Petitioner's filing of a new petition after Petitioner duly completes the process of administrative exhaustion.

Petitioner will be directed to submit his filing fee or to file his duly executed in forma pauperis application.

An appropriate Order accompanies this Opinion.


                                    s/Robert B. Kugler
                                    **Robert B. Kugler**
                                    **United States District Judge**

Dated:    June 2, 2009